STATE OF MAINE

KENNEBEC, ss.

STATE OF MAINE,

Appellee

v.

JOSHUA BLACK,

Appellant

SUPERIOR COURT
CIVIL ACTION
DOCKET NOS. AP-99-01 & 02

JRA-KEN — 4/26/2000

DECISION AND ORDER

In this matter the appellant, Joshua Black, appeals from the judgments entered in the Seventh District Court, Division of Southern Kennebec (*Vafiades, J.*) which reflect his convictions for the offenses of Cruelty to Animals, 17 M.R.S.A. § 1031 (Supp. 1997) *amended by* P.L. 1997, ch. 690, §§ 69, 70; P.L. 1999, ch. 254, §§ 19-21; P.L. 1999, ch. 481, § 1, and Discharging a Firearm Near a Dwelling, 12 M.R.S.A. § 7406(13) (1994). In these appeals, the appellant argues as to each charge that there was insufficient evidence adduced below to sustain a conviction on either complaint. This argument succeeds as to both complaints.

In reviewing a challenge to the sufficiency of the evidence, an appellate court applying Maine law is to review "the evidence in the light most favorable to the State to determine whether a factfinder 'rationally could find beyond a reasonable doubt every element of the offense charged.'" *State v. Marden*, 673 A.2d 1304, 1311 (Me. 1996) (quoting *State v. Taylor*, 661 A.2d 665, 668 (Me. 1995)).

After a careful review of the trial transcript, the evidence in this case, as restated in the light most favorable to the State, could be found by a rational factfinder as follows:

According to witness Wendy Johnson, on the morning of December 9, 1997, she went to her rabbit hutches where she kept two rabbits, and fed and watered them. She then shut and latched the doors to the hutches which are designed with spring latches and eye hooks so that an animal cannot open them. She then left for work. At about 3:30-3:35 p.m., she returned home and, while standing in her driveway, she heard a gunshot. She looked up and saw the appellant, Joshua Black, standing at the edge of his property, looking at the ground by his feet. She called to him, "Hey, you're shooting that gun kind of close to the houses aren't ya?" T.T. at p. 11. She placed the appellant at "two hundred and fifty feet, maybe;" T.T. p. 11 "two hundred and fifty feet, maybe, three hundred," T.T. at p. 29, from her as she stood in her driveway.[1]

---

[1] The appellee's brief makes a number of references to testimony from Ms. Johnson that when she observed the appellant on this occasion that he was holding a firearm. Appellee's Brief at pp. 2, 10, 12, 13, 14. The court has read the pages cited for this factual proposition, indeed, the entire transcript, and can find no testimony that describes the appellant as having a firearm in his possession when sighted by Ms. Johnson. The appellee also states in its brief that Ms. Johnson "looked in the direction of the gunshot" and saw the appellant. Appellee's Brief at p. 2. The court cannot find this testimony either. Last, the appellee states in its brief that the appellant left his position near the soiled spot in the snow and went into the woods. Appellee's Brief at p. 12. The court can also find no testimony to support this assertion.

2

She then went into her house for a few minutes, but went back outside on to her deck and heard three more gunshots coming from the woods, about 300 yards from where she had last seen the appellant.[2]

She returned to her house, but exited again about 20 minutes later to change the rabbit's water and give them "night treats." Upon arriving at the hutch, she found the rabbits gone, but the doors latched and shut. She looked for the rabbits to no avail and gave up the search because she had the flu. She then called the police.

Two days later, on December 11, Ms. Johnson followed a path that took her from her hutches to the spot where she had seen the appellant two days earlier. At that spot she saw a soiled area in the snow like the type of stain she had seen her rabbit, Maggie, make in the snow in the past when she rests her belly there. This rabbit apparently would lie in her own droppings and urine in her hutch which stained the fur of her belly, so that when she rested in the snow, it would leave a tell-tale mark. Ms. Johnson then saw a trail of urine and blood spots down through a clearing and found Maggie up against a tree with a bullet hole in her back. Again the police were called.

Two days later, on December 13, Ms. Johnson's friend, Pam Isham, found the second rabbit, Scooter, also dead in the vicinity of a deer stand where Ms. Johnson had heard the second shots four days earlier. This rabbit appeared to Ms. Johnson to have two bullet holes in him.

---

[2] Ms. Johnson did not testify that she saw the appellant in the vicinity of where these shots came from.

3

Maine State Trooper Joseph Mills investigated the case and observed on December 11 footprints leading off in several directions from the soiled spot in the snow, near to where the appellant had been seen on December 9. One path led to the property of Wendy Johnson across a neighbor's lot, the Demos', which is between the Johnson lot and the appellant's home. Footprints also led into the wooded area and back towards the Blacks' property where the appellant lived.

When the trooper returned on December 13, he found four spent .22 caliber shell casings in close proximity to where Scooter's body was found. The casings were partially covered by leaves.

A .22 caliber Marlin rifle owned by the appellant and ordinarily used by him was seized and identified as "matching" three of the four .22 caliber shell casings found near Scooter's body. The Marlin is an "automatic" rifle which ejects shell casings as it is being fired.

The two dead rabbits were found on the property of the appellant's family. This property runs to the rear of Ms. Johnson's and several other neighbors but also contains a house lot which borders the same road as the other neighbors' lots.

Upon autopsy, Maggie was found to have died as the result of a single gunshot wound, Scooter by virtue of a gunshot wound to the head. The latter rabbit had also been mutilated pre-mortem with a hole in the abdomen, both eyes punctured, and one ear lacerated.

Victoria Demos, whose house lot separates the Blacks' from Wendy Johnson's lot, heard gunshots sporadically throughout December 9. The same day in the late

4

morning or early afternoon, she saw a man across the street from her house and her neighbors' walking toward the Blacks' house, carrying a gun and wearing a brown "Carhartt" jacket. She could not identify the man, did not see him fire his gun, and did not hear gunfire while she observed him.

On December 14, Trooper Mills observed the appellant wearing a brown "Carhartt" jacket.

Disregarding the arguments the defendant made at trial that Ms. Johnson confused his identity, could not have seen him where she claims, and that he did not have access to his rifle that day, the State's case to establish guilt may be distilled to the following:

A man with a jacket of the same style and color as one which the defendant wore days later was seen with a gun in the same neighborhood as where the crimes occurred on the day they likely were committed. Later that day, the defendant is seen standing next to a spot where the rabbit Maggie had rested in the snow at some point in time, probably that same day. There are footprint paths going from the rabbit hutches to this spot, another path from there into the woods, and another from the appellant's home, across a neighbor's; to Ms. Johnson's. Three of four shell casings found in close proximity to where the second rabbit was found with one gunshot wound came from the defendant's gun. Gunshots were heard on the day the rabbits disappeared in the vicinity of where the second rabbit was found and soon after the defendant was seen near a spot where the first rabbit had rested in the snow.

5

The problem with deriving guilt from these facts is that they fall far short of evidence, taken in the light most favorable to the State, which could rationally inculpate the appellant as to either charge. It was never established, directly or circumstantially, that he either possessed or discharged a firearm that day.[3] Taken together with the absence of evidence that he could be placed within 100 yards of a residence on the date in question defeats any possibility of a conviction for Discharging a Firearm Near a Dwelling. The only evidence that the State can rely on to sustain that charge is that Ms. Johnson looked up when she heard a gunshot and saw the appellant and accused him of firing a gun too near the houses. She never testified that he either had a gun or that the sound of the gunshot came from where he was standing. Moreover, the best she could do was to estimate the distance the appellant was standing from where she was standing in her own driveway. Even if there had been testimony that the defendant had a gun on this occasion and might have just discharged it, causing Ms. Johnson to look up at him, no one measured the distance from any dwelling to the stained spot in the snow where the appellant had been standing. Instead, we have the witness's approximation, which she acknowledges she is "not real good at," as "two hundred and fifty feet, maybe, three hundred," T.T. at p. 29, from the defendant's location to where she stood in her driveway, as opposed to a dwelling. Coupled with the absence of any testimony that the appellant possessed or discharged a firearm during

---

[3] The closest the State comes to succeeding with this issue is the evidence of the man with a jacket similar to the defendant's, holding a firearm of indeterminate description while walking in the neighborhood at an earlier hour in the day than when the defendant was seen by Ms. Johnson.

6

this incident makes conviction for this crime unsustainable. The plain requirements of the statute prohibiting the discharge of a firearm near a dwelling are proof that the accused discharged a firearm, that he did so within 100 yards of a residential dwelling, and that he did not have the permission of the owner of the dwelling in question to so act. 12 M.R.S.A. § 7406(13). The State's evidence, at its best, proved none of these things. Accordingly, the appellant's quest to have this conviction set aside must succeed.

The conviction for Cruelty to Animals fares no better. At best, the State's evidence was that on the day the rabbits were released and were probably shot, a man wearing a brown jacket, of the same color and brand as one the defendant wore several days later, was seen in the same neighborhood where the crimes were committed, carrying a gun of some type. No evidence was adduced as to whether or not such jackets were unusual or are common attire, nor that the rabbits were shot near in time to when this man was seen. The appellant was seen later that day, standing on his own property and looking downwards at a spot where one of the rabbits had rested on its belly. He is not described on this occasion as wearing a brown Carhartt jacket, possessing a firearm or discharging one.[4] This first rabbit, Maggie, is found near a tree at an undetermined distance from the soiled spot in the snow. No footprints are described as going from the spot where the appellant stood to where Maggie was found. Although she had been shot, no shell casings were found near her or the soiled spot and no evidence connects the appellant's firearm

---

[4] Indeed, Ms. Johnson describes the appellant as wearing a blue jacket.

to this crime. A bit later gunshots are heard coming from the woods. Four days later the second rabbit is also found in the woods with three shell casings nearby that came from a rifle owned by the appellant. No evidence is adduced as to how long those shell casings had been there or whether or not this second rabbit was injured with a bullet of the same caliber as these casings. Moreover, the appellant is never seen in these woods during the time period in question, nor is there any evidence that he had a gun there or discharged it. There is also no evidence that he possessed or used a tool that might have caused the disfiguring injuries to this rabbit near in time to its disappearance or discovery.

There was evidence of a path near where the appellant was seen standing on the afternoon of December 9, and that this path led from the hutch, went across a neighbor's lot, and also went into the woods. There was no testimony as to when this path, or paths were made, that the defendant was seen walking on any of them, or that the path to the woods led to Scooter's body and the three shell casings.[5]

In the end, however, the State's case rests on the appellant being sighted near a spot where one of the missing rabbits must have rested in the snow at some point in time on the day it disappeared, and three of his shell casings being found in the woods near where the second rabbit was found shot. So, while the evidence is strong that these animals were cruelly treated, the evidence that the appellant

---

[5] Inferentially, the path from the Blacks' lot to where the appellant was seen standing may have been used by him. There is no evidence as to his having used that route on December 9, however, and none that he was seen walking on the others. Indeed, Ms. Johnson never describes the appellant as moving or walking at all -- just standing near and looking down at the spot where Maggie had rested in the snow.

inflicted this treatment is scant and is as consistent with innocence as it is with guilt. His presence at a spot where one of the victimized rabbits may have earlier been present proves no more than that. Reasons as consistent with innocence as with guilt might place him there. After all, he was on his own property and might simply have been observing an unusual mark in the snow. He is never otherwise associated with the rabbit that left that mark and was apparently observed there at a different point in time than the rabbit was, as Ms. Johnson did not testify that she saw her rabbit when she saw the defendant looking down at his feet.

His shell casings in the woods may have been ejected there at any time and also have no association with the second rabbit except that it was shot, albeit by a firearm of undetermined caliber. No other evidence connects the appellant with this crime with the possible exception that this rabbit was found in the woods owned by the appellant's family. No evidence however was provided that the appellant was in those woods at any point in time related to the disappearance and killing of this rabbit nor that the foot path leading from the spot the appellant was seen on December 9 led to the place where the shell casings and Scooter were found.

In sum, while the court is mindful of the deferential standard to be afforded to the trial court, and that circumstantial evidence can be relied upon to sustain a conviction, *State v. Benner*, 654 A.2d 435, 437 (Me. 1995), the evidence in this case supports other rational alternative explanations for the appellant's potential connection to these crimes so that those explanations could not be reasonably

rejected.  *State v. Haines*, 621 A.2d 858, 860 (Me. 1993).  That being so, this conviction must also be set aside.

Accordingly, the entries will be:

Judgments VACATED; REMANDED to the District Court for entry of judgments of acquittal.

So ordered.

Dated:  April 26 , 2000

John R. Atwood
Justice, Superior Court

Date Filed __02/22/99__ ___KENNEBEC___ Docket No. __AR99-02__

County

Action __APPEAL FROM SO KENN DISTRICT COURT__

| State of Maine | vs. | JOSHUA BLACK |

| Offense | Attorney |
|---|---|
| DISCHARGING A FIREARM NEAR A DWELLING PLACE<br>TITLE 12  SECTION 7406-13  CLASS E | ~~PJ PERRINO ESQ~~  PETER BICKERMAN ESQ<br>PO BOX 747      45 MEMORIAL CIRCLE<br>AUGUSTA ME 04330 AUGUSTA ME    04332 |

| Date of Entry | |
|---|---|
| 02/22/99 | Case received from Southern Kennebec District Court upon appeal. |
| 8/16/99 | Transcript of Trial on 1/8/99 from District Court filed by Electronic Recording. |
| 8/19/99 | Briefing schedule mailed to counsel.  Appellants brief due September 20, 1999 |
| 8/24/99 | Transcript ORDER filed by the State.  Attested copy of ORDER mailed to Electronic Recording Division. |
| 9/15/99 | Appearance of Peter Bickerman, Esq. entered for the defendant. |
| 9/15/99 | Unopposed Motion of Defendant-appellant for Enlargement of Time to File a Brief.  No Obj by State. |
| 9/16/99 | ORDER Granting Enlargement of Time filed.  s/Studstrup, J.<br>It is hereby ORDERED that the Motion of the Defendant-Appellant is GRANTED. The deadline for the filing of the Brief of the Defendant-Appellant is hereby enlarged to October 20, 1999.<br>Copies to attys. |
| 10/15/99 | Unopposed Motion of Defendant-Appellant for Further Enlargement of Time To File Brief filed. |
| 11/3/99 | ORDER GRANTING ENLARGEMENT OF TIME filed.  s/Studstrup, J.<br>IT is hereby ORDERED that the Motion of the Defendant-Appellant is GRANTED. The deadline for the filing of the Brief of the Defendant-Appellant is hereby enlarged to November 12, 1999.  Last enlargement for Appellant.<br>Copies to attys. |
| 11/12/99 | Brief of defendant-appellant filed. |
| 12/10/99 | Unopposed Motion of the State for Further Enlargement of time to file brief. |
| 1/11/2000 | Appellee's Brief filed.  s/Grant, ADA. |
| 01/25/00 | Reply Brief of Defendant-Appellant filed. s/Bickerman Esq. |
| 3/28/00 | Hearing had on Oral Arguments with Justice Atwood, presiding, Kim McCulloch, Court Reporter, Peter Bickerman, Esq., for Petitioner, and Brad Grant, ADA.<br><br>Case under advisement. |

Date Filed __02/22/99__ _____ Docket No. ___AR99-01___

County

Action __APPEAL FROM SO KENN DISTRICT COURT__

**DONALD L. GAMBRECHT**
**LAW LIBRARY**

**MAY 4 2000**

State of Maine      vs.     JOSHUA BLACK

| Offense | Attorney |
|---|---|
| CRUELTY TO ANIMALS<br>TITLE 17-A SECTION 1031    CLASS D | P.J. PERRINO ESQ    PETER BICKERMAN ESQ<br>PO BOX 747     45 MEMORIAL CIRCLE<br>AUGUSTA ME 04330   AUGUSTA ME 04332 |

| Date of Entry | |
|---|---|
| 02/22/99 | Case received from Southern Kennebec District Court upon appeal. Defendants exhibit's 1-16 recieved with appeal case. |
| 8/16/99 | Transcript of Trial on 1/8/99 from District Court filed by Electronic Recording. |
| 8/19/99 | Briefing schedule mailed to counsel. Appellant's brief due 9/20/99. |
| 8/24/99 | Transcript ORDER filed by the State. Attested copy of ORDER mailed to Electronic Recording Division. |
| 9/15/99 | Appearance of Peter B. Bickerman, Esq. entered for the defendant. |
| 9/15/99 | Unopposed Motion of Defendant-Appellant for Enlargement of Time to File a Brief. No Obj. by State. |
| 9/16/99 | ORDER Granting Enlargement of Time filed. s/Studstrup, J.<br>It is hereby ORDERED that the Motion of the Defendant-Appellant is GRANTED. The deadline for the filing of the brief of the Defendant-Appellant is hereby enlarged to October 20, 1999.<br>Copies to attys. |
| 10/15/99 | Unopposed Motion of Defendant-Appellant for Further Enlargment of Time to File Brief. |
| 11/3/99 | ORDER GRANTING ENLARGEMENT OF TIME filed. s/Studstrup, J.<br>IT is hereby ORDERED that the Motion of the Defendant-Appellant is GRANTED. The deadline for the filing of the Brief of the Defendant-Appellant is hereby enlarged to November 12, 1999. Last enlargement for Appellant.<br>Copies to attys. |
| 11/12/99 | Brief of defendant-appellant filed. |
| 12/10/99 | UNOPPOSED motion of State for futher enlargement of time to file brief. |
| 12/10/99 | Motion granted. s/Donald H. Marden, JSC. |
| 1/11/2000 | Appellee's Brief filed. s/Grant, ADA. |
| 01/25/00 | Reply of Defendant-Appellant filed. s/Bickerman, Esq. |
| 3/28/00 | Hearing had on Oral Arguments with Justice Atwood, presiding, Kim McCulloch, Court Reporter, Peter Bickerman, Esq., for Petitioner and Brad Grant, ADA. |
| | Case under advisement. |